Good morning. When you're ready, Mr. Thielen. Good morning, Your Honor. May it please the Court. My name is Max Thielen and I represent the appellants in this case who are four individuals in the estate of an individual, all of whom were injured in a motor vehicle accident with a commercial motor vehicle. Our position here before the Court of Appeals is that the District Court erred by granting summary judgment and declaring that TrustGard Insurance, the appellee in this case, had no obligation to satisfy any judgment which the plaintiffs slash obtain in their underlying case in South Carolina against TrustGard. The reason the District Court ruled that way is because it believed that there was another motor carrier that had its own insurance policy that could pay for a judgment against that motor carrier and that because of that the public policy purpose behind the endorsement was satisfied so there was no need for TrustGard to pay under its endorsement. The reason we believe that's incorrect is because there's no such exception either in the terms of the law. Basically the way this endorsement is set up is to be a gap between the insurance that a motor carrier can get and what federal regulations require a motor carrier have for the protection of the public. It operates as a surety agreement so what happens is the insurer will pay a judgment on behalf of its insured but didn't seek reimbursement from its insured. The language of that endorsement is that TrustGard agrees to pay any judgment obtained against Michael Brown who is the motor vehicle carrier in this case resulting from the negligent operation maintenance or use of a commercial motor vehicle and so that is the express language of the surety agreement contained in the MCS 90 form which is an endorsement a part of the insurance policy the contract between TrustGard and the motor carrier. We think that's clearly implicated in this case because the motor vehicle accent which underlies this case was a truck owned by one company, a trailer owned by another company but the entire rig as a tow truck was operating under the ICC motor carrier number of Michael Brown who does business as SSS transport who has the policy with TrustGard and so we think that there are three avenues to liability for Michael Brown for this accident and I wanted to clarify that because in our briefing we suggested that there might be four but there are three. One is responding at Superior, one is negligent hiring training or retention and one is negligent entrustment of the ICC motor carrier credential. I wanted to clarify that because... Can I ask a question? Are those theories set forth in your complaint? They are in the, I believe they are in the South Carolina case that's pending in the Allendale Court of Common Pleas. I just, I look for negligent entrustment and all that and familiar with those theories. I'm not sure it ultimately makes an absolute difference in what we do but I didn't see any of those pleadings. I thought you pled that Moore was the agent, that Lengard was the agent and that he might be responsible for both of those and then you pled that Brown might be the owner operator. I didn't see any allegations about negligent entrustment or anything. Maybe, I know this plea may be picking apart or maybe I have an old pleading. Just to clarify, Your Honor, are you talking about TrustGard's complaint in the declaratory judgment action? No, I'm talking about the state court. Yes, sir. There is a 2017 complaint where there's an admitted complaint. Are you referring to that one? I may have missed that one then, thank you. I believe they're in there but I'm happy to supplement and correct it. That's okay, I'm sorry. But the point of that is that there's three potential avenues towards a judgment against Michael Brown which would be a judgment against him as a motor carrier resulting from the negligent operation, maintenance or use of a motor vehicle. So there is a real potential for this kind of... I don't want to draw attention but I'm sort of concerned about it and that's sort of why the district court exercised its discretion under the Declaratory Judgment Act to hear this case at all. So if we look back and you cite a few of these cases both from the Fourth Circuit and the Seventh Circuit, you raised the issue below but particularly it seems like where we have a state court action addressing many of the same issues, not necessarily the same issues, given some uncertainty about tort law and a lot of uncertainty, frankly, about the facts. I still have no idea who Moore is or what Moore is doing here. That this seems like precisely the kind of case where our previous decisions like Pen America and otherwise suggest that we, the district court, should not be exercising discretion at all to hear this Declaratory Judgment Act. Your Honor, we would agree entirely. We think that this was premature, it was right. I think along the lines of what you're saying, I think this fits in the idea of Colorado River abstention which is when there's a co-pending state court action that's where the rule of decision is provided. The Supreme Court in Wilton said Colorado River doesn't apply in the context of an agency indemnification question. So I don't think it's Colorado River, but it is a variant of it, I think that's fair, that suggests that a district court, although it has discretion, here the district court didn't exercise that discretion one way or the other, it just went forward without any explanation of whether they were choosing to do so or not. And I'm concerned about whether that's right. And I take it that you agree with that, that it should have been dismissed. We'd be pleased with the remand to address that issue. And we do think it would be appropriate for the courts to, in its discretion, decline to hear this because for the concerns you noted, the co-pending state court action where state law provides the rule of decision and a lack of clarity regarding the facts, it seems like it would be in the best interest of this court's and every court's time to let the state court action play out and then to decide whether or not it should have been dismissed. And related to that, do the theories that now are present in the state court action create the possibility that Brown could be held liable and a judgment entered against Brown, but McWilliams could not be held liable and a judgment and therefore his policy not be rendered against him? I believe that is a theoretical possibility that there could be a judgment against just Brown and not McWilliams. Obviously, as the plaintiff's attorneys, we hope that that doesn't happen. But what would the theory be? Tell me, articulate a theoretical story that that would take place. So one theoretical story is. I'm not, I understand you're the plaintiff's lawyer. This isn't your view. I'm just trying to understand as a theory, Judge Quattlebaum's question. Well, part of litigating a case for a jury trial is sometimes the results the jury reached don't exactly mesh with any theory. So one theory is that there's no theory, but that's the verdict that the jury renders. That's theory number one. But there are three causes of action that could split particular ways, one of which is they could be found vicariously liable for what McWilliams did and then to not apportion any fault directly to McWilliams because South Carolina has an apportionment statute if any particular entity is left. Less than 50 percent of faults. So it's possible under that apportionment statute in a theory of vicarious liability, all the blame could be pushed on to Brown since it was his credential that this whole operation was operating underneath. Not super strong, but the point is it's possible. And because it's possible, that means there could be a judgment just against Brown and not against McWilliams. And that's why it's important also to carefully scrutinize what Trust Guard is saying when it says there's coverage for the underlying incident. It's important to be more particular about that. What they're actually saying is that if there's a judgment against McWilliams, the McWilliams policy would pay the judgment against McWilliams. In the event, I think that Judge Quadenbaum was after, is that if there's a judgment just against Brown and not against McWilliams, there will not be coverage under that policy. There will not be coverage under the Trust Guard policy for Michael Brown. And the MCS 90 and surety would certainly be implicated in that situation. And so for that reason alone, it was improper for the trial court to, for the district court to grant summary judgment and make that declaration. I don't want you to go outside of the record. And so I want to be a little careful about that. But you mentioned that there's a 2017 complaint. I only have the one from 2016. But based on the record, can you tell me anything about who and what James Moore and Gerald Lingard had to do with this? My understanding is that the tow truck was picking up some stranded drivers. And those two individuals were the stranded drivers that were being picked up by the tow truck. That's my understanding. I'm not promising. That's what it is. Unless you go, never mind. Thank you. So one thing that I did want to address is the district court suggests there's some kind of exception to this surety agreement when another entity can pay and points to a decision, which is Carolina casualty. The reason that decision doesn't apply is because in that case, the motor carrier who had a judgment against it had other insurance. And so because it's a surety relationship, if somebody satisfies the judgment against that motor carrier on behalf of that motor carrier, then there's no obligation to provide surety because the minimum amount have been met. That's different from a situation like the case we quoted, which is Herod, where there are more than one motor carriers. But each motor carrier has an independent obligation to satisfy any judgment against it under the financial responsibility regulations, which is to say that just the fact that another motor carrier satisfies a judgment against it doesn't relieve you as a motor carrier from satisfying a judgment against yourself, nor does it relieve your surety. I'm sorry. Just when you said that about the two motor carriers, you may already have addressed this, but I am having trouble just getting my hands around what's going on here. Is it, is it clear from what we have of a factual record here that there are two motor carriers in this case? Uh, yes, Your Honor. Um, Michael Brown is a motor carrier and, uh, Kevin McWilliams, the owner of the truck also is. But for purposes of this accident, if Brown is transporting things for McWilliams, am I getting that backwards? If McWilliams is transporting things for Brown, don't they become one motor carrier for purposes of the regulation and for purposes of this accident? Well, that's a factual question that's developed below, which is, are there different motor carriers? Are they a joint venture? So right now we don't know whether we have two motor carriers for purposes of the case you were talking about, the Herod case. We think we probably have two, but it's not for sure. Okay. And there could be three because there's also a motor carrier that owns the trailer. So there's a lot. Um, but we might only have one. I don't, it's possible, but I think it's very unlikely because there are situations where one motor carrier will provide the truck and another motor carrier will provide the driver. And that could also be the case here where McWilliams provides the truck, but Brown is treated as providing McWilliams by giving him his credential. So it could be a case where you have driver and truck are each of the motor carrier and there are two. So is it theoretically possible that there's only one perhaps, but it's pretty unlikely. I may just be misunderstanding the regulation, but so if, if McWilliams is working for Brown, transporting something for Brown, those are still two different motor carriers for purposes of this accident and this regulation. I don't know an exact answer to your question, so I'm not going to say that I know for sure. Um, but that situation would only arise in the vicarious liability context and the negligent entrustment and negligent hiring or the negligent entrustment of the ICC credential. It would be different because they wouldn't turn on with that. I'm just trying to make sure I understand the question. I'm not trying to get you to give me, but that question in some sense would turn on the nature of the agency relationship. Yes, Your Honor. And we'd have to look to state law to determine what the Nate, if there is an agency relationship, which we've sort of assumed here, which may or may not be accurate. I know you think it is, but your colleague in Allendale probably will not. Yes. Right. But if there's agency and the nature of that agency relationship will ultimately be what determines Judge Harris question is how many motor carriers there are one, two or three. Yes, Your Honor. I think that will be decided in the state court case to some extent, or at least it will be that decision here will be informed by what is decided in the state court case. At least we will know the nature of the relationship among those various individuals, including Mr. Moore, so that we know what we're talking about when we talk about that agency relationship, even if ultimately the state court action doesn't resolve in some affirmative manner, the precise question we're asking. Absolutely, Your Honor. I believe that's correct. And so based on that, it is our position that there is the potential for a judgment against Michael Brown to which the surety obligation could apply. So it was incorrect, or at the very least premature to grant summary judgment and make the declaration the trial court did so that we would ask that this case be reversed. Thank you, Your Honor. Good morning. May it please the court. I'm Pete Davorian and I represent Trust Guard Insurance Company in this case. If I may address your issue about perhaps timeliness or just issueability of the case, I would refer, this is the issue, Judge. There was a $1 million policy on Mr. McWilliams' truck who was driving and was involved in the accident. He owned it. He was driving. So there's a million dollars on that. There were multiple people involved in this accident, one who was killed, a couple who were clearly seriously injured, and then a couple more with varying degrees of injury that I'm not that familiar with. Though we recognize, Trust Guard recognized from the outset that the $1 million policy is implicated. So the issue . . . $1 million McWilliams policy. Correct. Yes. Yes, sir. So as between, and I want to stay in the record, the idea behind the declaratory judgment action was to resolve whether there was another million dollars at play. Otherwise, litigating all of those cases, litigating multiple personal injury cases when there were potentially no other assets that anybody could collect, would be fruitless. That would be more fruitless than having the court address the issue of coverage up front. It's that issue, and I thought about it, that issue was addressed in a case which isn't cited in my brief, but it's 994 F SUP 918, which is McComb versus National Casualty. And the court addressed the very concern that you addressed, and it said, you know, where you clearly don't have enough coverage and where it may be appropriate sometimes to determine the coverage issue in advance. So, I'm not sure I'm familiar with McComb versus National Casualty. Was that a case that was just about liability coverage, or did it also include a duty to defend? Because I think that, Matt, and I can look, if you don't know off the top of your head, that's fine, but I can look. I mean, a duty to defend is a very different question. When you're talking about a surety where we don't, we plainly don't have a duty to defend, I think the declaratory judgment analysis looks quite different. It was related exclusively to the MCS 90 surety coverage. The F SUP case was? I'm sorry? Yes, sir. 994 F SUP 2nd 918. 918? Yes, sir. It's McComb versus National Casualty. And who, just so I know, who decided it? That was decided in the Northern District of Illinois. And I didn't find anything that was more on point on that. I appreciate you pointing it out. So a couple of things, and the appellant's counsel before the Fourth Circuit is not the appellant's counsel who handled the motion for summary judgment, and they're not the ones handling the underlying accident case. So a couple issues in their brief I just want to stress. One, first, we dispute that there's more than one motor carrier in this case, and I'll address that issue briefly. But it's our position that there's only one motor carrier, and there's no evidence to the contrary. There's Mr. Brown's DOT number, and that's it. Number two, there's a statement. Do you agree that an agency relationship could exist separate from that? I agree with that statement. It's possible that he could be driving for him. And that will play into whether you can have more than one motor carrier transporting goods in interstate coverage at the time of the accident. Two, and let me pause before I get to two. We believe, and I think I'll show, that a further understanding of the facts is not actually necessary for this court to affirm Judge Child's decision. With that said, as I prepared, I looked at the case, and I thought it would probably be easier for the Court of Appeals if some more of the facts had been developed. I would submit that it's a pure legal issue that can be decided on what's on the record, but there are things that aren't in the record. The record is a little murky on some facts. There's some things that aren't disputed. It's jitterous. Yeah. Well, the actual testimony of the people who were involved in the underlying events is not 100%. They don't agree with each other on every issue, so we didn't get into those facts because we don't believe that it's necessary to decide this particular issue. The one other thing I would address, and I don't know if this is going outside of the record, the amended complaint was filed as an exhibit. To the complaint for declaratory relief, it's Exhibit A, and it was, let me make sure I'm not misstating something. I think this is the operative complaint. This is the 2016 complaint. I'm looking at that one. Yeah, I apologize. That's what I'm looking at as well. I think I have it, but we'll stay in the record. All right. There is a statement in the appellant's brief that it's uncontradicted that the vehicle was involved in interstate commerce at the time of the accident. That's not uncontradicted. I won't address it further, but that's not uncontradicted, and there's no evidence as to whether there was anything on that car trailer at the time that it was actually pulling off of the interstate. So these are the facts that we think are relevant. McWilliams was operating his own truck at the time of the accident. He was pulling a trailer that was owned by somebody named Kieron Murray, a car trailer, not like a tractor trailer thing. He's pulling off the side of the road. He gets rear-ended. Trust Guard insures him for a million dollars. The Federal Congress decided that the minimum coverage on a car, a vehicle like his, is $750,000. He had more coverage than that. The only way that ... When Congress enacted the Motor Carrier Transport Act in 1980, one of the concerns that it had was that motor carriers, let's just say Joe Smith Trucking, were hiring independent contractors who would lease their trucks to them, or they would have some arrangement and say, you haul this load for me across the country. They would drive over somebody. They didn't have adequate coverage or any coverage. And the trucking company, the motor carrier's policy didn't provide any coverage because it wasn't a listed vehicle. The direct insurance policy says, we'll cover these listed vehicles. So as part of solving that problem, Congress said, all right, from now on, we're going to attach to everybody, every motor carrier's, registered motor carrier's policy ... Well, there's a couple ways to do it. But in this way, it's an MCS 90 endorsement, which says, this is a surety. If there's a judgment against your insured operating out of the ownership, maintenance, or use of a vehicle, your ownership, maintenance, or use of a vehicle, then we'll pay. No, no, no. I want to talk to you about language. There's no your in that sentence. Your would provide a whole lot of clarity. But it doesn't say your. It says, resulting from negligence in the operation, maintenance, or use of motor vehicles. Not your motor vehicles. Listen, I understand the purpose, right? But if we're going to talk about what this means, which I hope you do ... I do. There's no your in there. I didn't mean to misspeak, Your Honor. In the statute either. I mean, what I think you're getting at, and Judge Richards is talking about, is what may be the purpose. And I've read about that. But it does not appear that the purpose is reflected in the language of either the endorsement or the statute. So, are you asking us to insert terms that are not in the black and white language of the endorsement or the statute? I agree with your statement. And when you read it, it is less than clear. But no, I'm not asking you to insert terms other than the overwhelming weight of case law authority, which explains what the purpose is and explains why it doesn't apply to everything. So, we have to go to ... And I think you're being ... I appreciate your candor that to get to the result, we do have to look beyond the actual language to cases that articulate the reason for the language. Yes, Your Honor. Agree 100%. And I wish it weren't the case, but it is. So, and one of the cases that we both cited to and that was discussed at length in the brief is Herod versus Wilshire. Wilshire was an insurance company. Herod was ... A lady named Herod was unfortunately killed in a motor vehicle accident. There was a tractor trailer called Dax Trucking that was pulling a tractor. The tractor was owned by a company named Espensheed Trucking. So, it actually owned it. So, the Herods claimed that an MCS 90 issued to ... Or let me back up. Wilshire, which insured Espensheed said, we shouldn't have to pay anything because the insurance company for the tractor that caused this accident, the driver that caused this accident paid more than the mandatory minimum of $750,000. The Herods said, no, that's not the case because they owned this tractor. I mean, they owned this trailer. Espensheed actually owned a trailer. So, the Court of Appeals actually remanded it to the district court to say, well, was Espensheed acting as a motor carrier when their tractor was involved in this accident? And ultimately, the court said, no, they weren't acting as a motor carrier. And therefore, the MCS 90 isn't implicated. What I think that's important about the point that you were making earlier, Judge Harris, is this. And I don't mean to be flip, but for the MCS 90 to apply to Mr. Brown, he had to have been acting as a motor carrier. He didn't own the vehicle.  He wasn't using the vehicle. He wasn't exercising any control over the vehicle. The only evidence in the record is that there was no lease agreement between these people. There was no contract agreement between them. For reasons that aren't in the record, Mr. McWilliams had his DOT placard in his truck. That's the only way that he can become liable in a way that would implicate the MCS 90 coverage. So, tell me why, in the language of the rider, you get that principle, that Brown must be acting as a motor carrier for this to be implicated. It doesn't seem to say that. The MCS 90, by regulation, it only applies to motor carriers, to registered motor carriers. And it's applied specifically for the purpose of ensuring that trucks that they use provide coverage. I don't want to neglect to address the point that Judge Quattlebaum registered, messaged earlier, but there's a couple cases I would refer to. One is, sorry, it's a long case. The threat, the Yates case? The Yates case. Wherein the court said, it follows that when the protection of injured members of the public is not at stake, MCS 90 and the relevant federal regulations do not address coverage for the purposes of disputes between the insured and the insurers. It's clear that while, where ICC regulations require the carrier or its certified insurer to protect the loss, protect the public from loss due to negligence acts, the regulations do not alter or reflect or affect the obligations. John Deere v. Nueva 229 F. 2nd 853, which we did cite, which is a Ninth Circuit state, a Ninth Circuit decision says, the purpose of the amendment is thus to protect members of the public against uninsured trucks. Can you also, looking at the rider itself, I mean, the first paragraph right before the language about agreement to pay says the insurance policy, and it goes on to say a few things, and it says in the third line, as a motor carrier property, inciting the statute. And so your point that it applies to a motor carrier, yeah, I think you may have some support in the language, but it gets to the question of whether we know right now whether or not there's only one motor carrier or not. Can we make a decision at this point when there's possibilities that there might be more than one? Do you understand my question? I do understand your question, and I think the answer is yes, and I get it. But this is why. Brown didn't own, I mean, I hate to beat a dead horse, Brown didn't own, maintain, or operate any vehicle in this accident. He can only be a motor carrier by the virtue of some theory, which they haven't articulated in their pleadings, that McWilliams was driving for him in some way. That's the only way. That's exactly, I mean, but that seems like exactly the theory that you said, going back to the purpose of this whole system, is that you got a motor carrier who's like using independent contractors, and we don't want them to be able to skirt around liability by doing that. So the purpose might be articulated. And at least there's some suggestion, I mean, we got one page of a deposition transcript where McWilliams seems to suggest that he was driving for Brown. I don't know exactly what that means, but whatever it means, there's a theory by which that's what's happening here. Then in that context, why would that mean there's still only one? You could have a motor carrier that is serving as an independent contractor for a second motor carrier. The MCS-90 would not be implicated because McWilliams' truck has the mandatory minimum of insurance. That's a different question. So that's a contract interpretation question, but it doesn't answer the separate question of why we necessarily must find only a single motor carrier, right? If Brown was a motor carrier, and he hired McWilliams as an independent contractor, and I'm obviously making up all kinds of facts, right? But assume that scenario, why could that not be, at least theoretically, that there are two motor carriers in there, one who's employing an independent contractor motor carrier? I think it's because only one motor, to be a motor carrier, you have to be transporting the actual property. I don't think two motor carriers can transport the same car at the same time. I thought the theory was if, I'm sorry, I can't keep my party straight, but if Brown, the guy who's not driving the truck, is a motor carrier at all, it's because he takes on McWilliams' identity because he hired McWilliams, right? Because otherwise, he's not a motor carrier. He's sitting at home when this accident happens. I didn't think both of them could be motor carriers in this scenario if the reason Brown is a motor carrier is because McWilliams is pulling something around for him. Under these facts, I agree with that statement. And if Brown's not a motor carrier, MCS 90 doesn't apply. So what bothers me, and maybe this goes back to just right where we started, is we're basically, or the district court was being asked to answer a question, what happens if there's two motor carriers, but one of the motor carriers is already insured? Does the endorsement come into play as to the second motor carrier? But we don't even know that we have two motor carriers here. But we don't have to know because... I know, but it seems right. So we could answer it as they did in that other case. We could answer it as a matter of law. If it turns out that there were two motor carriers, the second one is not going to be on the hook by virtue of this endorsement and then send it back and see. Does any of this have anything to do with what happened in this case? I would submit that we would say we don't have to know the answer to the question because the carrier that was driving the truck had the minimum limit. No, I understand. So we could answer the legal question presented as the district court did. It's just that it may turn out to be entirely beside the point if there is only one motor carrier in this case. We'd just be answering a legal question that would turn out not to apply to the facts of this case. Just as you said happened in that other case. I'm blanking on the name. The 10th Circuit case where they answered the question, sent it back, and the district court said, surprise, there weren't two motor carriers. I think, yes. Yes, Judge Harris. I have to concede that. But I would go back to McComb v. National Casualty and say, we're going to litigate two, all these wreck cases over this issue. So to that point, it may have, I understand, some practical benefits to the party so they can figure out if they could settle this case or what sort of money they have. I get that. I wasn't that far removed from those sort of discussions. But to your point, isn't the issue, don't you have to answer, if it's possible that there are two motor carriers, don't you have to answer the contractual interpretation question as to the purpose of the rider or the endorsement to not apply if there's other available insurance that meets the minimum levels? Am I making sense? If Brown's a motor carrier, I'm not certain that I understand the question. It gets a little Byzantine, these cases. I may not be asking it well, and I apologize for that. But I thought we were just, in response to Judge Harris' question, you were saying, we don't have to decide right now if there is only one motor carrier or not. I think you believe there is, based on the record, only one because Brown wasn't using, operating, and retaining. I get that. But if there is a finding that there are two, I think you said that doesn't matter. We can still decide. And you base that on the availability of coverage under the McWilliams policy. And I think that requires a conclusion that the endorsement doesn't apply if there's other available coverage,  I would base it on the fact that the MCS-90 would not apply to Brown under those circumstances because he is not owning, he doesn't maintain, he isn't owning, maintaining, or using the vehicle that's involved in this accident. Thank you. Can I ask a kind of, can I keep you up there for more? You've been extremely helpful, and I'm very appreciative. The statement was made, I think it was Judge Harris, but I want you to tell me where I'm looking to find it. That you must be transporting in order to be a motor carrier. I want to come back to this question of how do we know that there's only one motor carrier? And in the hypothetical where I'm a motor carrier and I contract with another motor carrier to carry stuff, what do I look to to ensure myself that that's, only one of them can be a motor carrier? That if I'm using, if I'm a motor carrier and I'm using an independent contractor to haul a load across the country, so I've got a principal and an independent contractor, that only one of them can be a, quote unquote, motor carrier for purposes of the Motor Carrier Act of 1980? I think you look to the purpose of the act and the cases interpreting it, and you say, we make sure, I'm the big trucking company, I make sure that you have the mandatory federal insurance. And if I do that, I've satisfied the act and its purpose. I totally get that. My question is a different one. I just want to know purely as a definition, when I'm like writing something down and I got principal and I got independent contractor, can I use the term motor carrier to describe both of them? I understand your argument about the contract. I'm just saying literally, or is the independent contractor and the principal, are they both motor carriers under the Motor Carrier Act of 1980? Or is there some reason that only one of them can be, quote unquote, transporting the property at a time? I think they can both be registered motor carriers and have their own DOT numbers. But I think under the circumstances here, only one of them could be actually transporting the property. I think, don't the regulations define a motor carrier to include a motor carrier's agent? I mean, this goes back to the state law. But then, so if the motor carrier includes the agent, the person you hired to pull the stuff, there's still one motor carrier. They're not two separate motor carriers under the regulation, right? The Chair, I believe that's to be the case. But if I sit here and tell you, I'd be lying. So would I. There's a lot of... Thank you. Thank you, Your Honor. Appreciate it. Thank you. Thank you. Thank you, Your Honor. I think, obviously, one of the big issues we're struggling to get this question right is, are there two motor carriers? How does that work? And the reason that's a struggle is because the district court didn't even reach that question. And this is what happened in Harrod, where Harrod says, no, the endorsement could apply. But we don't know if there's two motor carriers. So let's send it back to the district court to see if there's two motor carriers. So there's a variety of options here. We could send it back to the district court for it to exercise its discretion and just sit on the case for a while. Or you could send it back to the district court to ascertain whether there are more than one motor carriers, in which case this case could move forward and we would ascertain that issue so that we could answer this question. Or you could just reverse completely and that would be our preferred result. But either of the remand options, I think the middle one might also address my opposing counsel's concern, which is the case could go forward while the district court decides if there are one or two motor carriers and do a little bit of discovery for that. But why would the district, I understand that possibility, but then we'd have the district court engaging in duplicative discovery of the state court action, wouldn't we? Isn't that what happens in the underlying tort case? Yes, Your Honor. A lot of the relationships will be determined in the underlying tort case. So it would be our preference that the district court action is stayed or in its discretion declines to issue a declaratory judgment. I'm just offering that as another potential compromise. But I do think that one of those two are necessary because I think that the district court did get the ultimate legal issue incorrect. As this court said in Canal Insurance versus District Service, that the correct way to read the MCS endorsement is to faithful to the express language of the endorsement. So the idea of saying, well, there's this general public policy and so we should make an exception is not the way that the court has in the past instructed us to read these endorsements. And I also think that correctly construing the purpose is also important because there's the general purpose, which is to ensure that people are not injured by an uninsured motor carrier. But there's the more specific way in which that purpose is accomplished expressed in the text of the statute and the regulation, which is that every motor carrier has to be responsible for judgments against itself. And that's expressed very well in Herod, which is where the Tenth Circuit lays out that the point of this MCS 90 surety is that each motor carrier is able to satisfy minimum amounts of a judgment against it. So in the event that the- Is your position then, do I hear you that if there's a judgment against Brown and McWilliams for $2 million, and McWilliams' million dollars is exhausted, that the endorsement is there as an- It may be 750. I don't know if the endorsement's 750. The endorsement's there to provide additional insurance. Is that your position? Yes, Your Honor. On behalf of Brown. Now, there are a couple of different- And that's- I'm sorry to interrupt you. And that's based on the fact that there is no limitation in the endorsement or the statute to some exception if other insurance is available? The only exception to the endorsement is the one that the Tenth Circuit recognized in- I forget what it is. Yeats. Which is that, basically under the principles of surety law, if somebody else has satisfied the debt of the motor carrier on behalf of the motor carrier, then there's no obligation of the surety to pay. You think this is additional insurance that stacks on top of the other if there's a judgment against both of them? It's- If there's a judgment- And it's difficult when it's like a $2 million judgment joint and severable. But under South Carolina's apportionment statute, there could be discrete judgments of $1 million against one and $1 million against the other. And the policy for McWilliams would pay the McWilliams judgment. The MCS endorsement would go toward the Brown judgment. And so it's- And it's not stacking insurance, right? Because the Brown piece, Brown's still on the hook for it, right? Yes, Your Honor. McWilliams insurance means McWilliam walks away, he's done. Brown, now he may not be able to pay it, but in theory, he's still got the judgment against it. It's not really insurance. It's a separate surety. It's a surety agreement. Trust card can sue him for every penny, but of course he'll go bankrupt in reality. So that's the nature of that agreement. So my point there is to say that the express language of the endorsement, which is essentially the regulation and it is the MCS 90 form is literally an illustration of the Code of Federal Regulations. So they're the same. And that express language, under that express language, there's certainly the potential that there is a judgment the trust card would be obligated to satisfy. So the district court's reasoning for its declaratory judgment and its granting of the motion for summary judgment is unsound. So respectfully, we believe this case should be reversed. And if necessary, we could instruct the district court to look at whether there are one or more motor carriers or to exercise its discretion to see whether declaratory judgment is even appropriate. Unless there are any other questions, Your Honor. Thank you very much. We will come down and greet counsel and ask the clerk to adjourn court until 2.30 this afternoon. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Pamela A. Harris, Julius N. Richardson, A. Marvin Quattlebaum Jr.